1  RON BENDER (SBN 143364)
   JACQUELINE L. RODRIGUEZ (SBN 198838)
2  JULIET Y. OH (SBN 211414)
   LEVENE, NEALE, BENDER, RANKIN & BRILL L.L.P.
3  10250 Constellation Blvd., Suite 1700
   Los Angeles, California 90067
4  Telephone: (310) 229-1234
   Facsimile: (310) 229-1244
5  Email: rb@lnbrb.com, jlr@lnbrb.com, jyo@lnbrb.com
6
   Proposed Attorneys for Chapter 11 Debtors
7  and Debtors in Possession
8

9              UNITED STATES BANKRUPTCY COURT

10             CENTRAL DISTRICT OF CALIFORNIA

11             SAN FERNANDO VALLEY DIVISION

12

13 | In re                              ) Case No. 1:09-bk-13964-KT
                                        ) Case No. 1:09-bk-13965-KT
14 | FATBURGER RESTAURANTS OF           )
   | CALIFORNIA, INC. and               ) Chapter 11
15 | FATBURGER RESTAURANTS OF           )
   | NEVADA, INC.,                      )
16                                      )
17 |              Debtors.              )
                                        )
18 |_____      )
                                        )
19 | ___ Affects Fatburger Restaurants of ) **APPLICATION OF DEBTORS AND**
   |     California, Inc. Only          ) **DEBTORS IN POSSESSION TO**
20                                      ) **EMPLOY FOCALPOINT PARTNERS,**
   |     Affects Fatburger Restaurants of ) **LLC AS FINANCIAL ADVISOR**
21 | ___ Nevada, Inc. Only              ) **PURSUANT TO 11 U.S.C. § 328;**
                                        ) **DECLARATION OF DANIEL S.**
22 | _X_ Affects Both Debtors           ) **CONWAY IN SUPPORT THEREOF**
                                        )
23                                      ) [No Hearing Required – Local Bankruptcy
                                        ) Rule 2014-1(b)]
24                                      )
25                                      )
26                                      )
27 |_____      )
28

1    **TO THE HONORABLE KATHLEEN THOMPSON, UNITED STATES**
2    **BANKRUPTCY JUDGE:**

3    Fatburger Restaurants of California, Inc. ("FB California") and Fatburger Restaurants of
4    Nevada, Inc. ("FB Nevada," and together with FB California, the "Debtors"), the debtors and
5    debtors in possession in the above-captioned chapter 11 bankruptcy cases, hereby submit their
6    application (the "Application") for Court approval of their employment of FocalPoint Partners,
7    LLC ("FocalPoint") as the Debtors' financial advisor pursuant to 11 U.S.C. § 328 and upon the
8    terms and conditions described below. In support of this Application, the Debtors respectfully
9    represent as follows:

10   A.    Background.

11   1.    On April 7, 2009 (the "Petition Date"), the Debtors filed voluntary petitions
12   under Chapter 11 of 11 U.S.C. § 101 *et seq.* (as amended, the "Bankruptcy Code"). The
13   Debtors continue to operate their business, manage their financial affairs and operate their
14   bankruptcy estates as debtors in possession pursuant to Sections 1107 and 1108 of the
15   Bankruptcy Code.

16   2.    The Debtors are presently the owner-operators of twenty eight (28) Fatburger
17   restaurants located in California and Nevada. FB California presently owns and operates
18   fifteen (15) restaurants in California and has approximately 285 employees. FB Nevada
19   presently owns and operates thirteen (13) Fatburger restaurants in Nevada, employs
20   approximately 205 employees, and owns two parcels of developed real property in Nevada.
21   The Debtors' revenue is derived from sales at their respective restaurants. In 2008, the Debtors
22   had combined annual revenue of approximately \$26 million, approximately \$14 million of
23   which was generated by FB California and approximately \$12 million of which was generated
24   by FB Nevada.

25   3.    The Debtors are part of a larger Fatburger enterprise which, as of the Petition
26   Date, consisted of approximately 90 restaurants in 14 states as well as 3 foreign countries
27   (Canada, Dubai and China). The Debtors are both wholly-owned subsidiaries of an entity
28   called Fatburger Corporation ("FB Corp."), which is, in turn, a wholly-owned subsidiary of

2

1  Fatburger Holdings, Inc. ("FB Holdings"). FB Holdings serves only as a holding company and
2  does not have any employees. FB Corp. houses the Fatburger enterprise's corporate activities
3  and has approximately 31 employees. Another wholly-owned subsidiary of FB Corp, Fatburger
4  North America, Inc. ("FB North America") does not own or operate any restaurants and does
5  not have any employees, but serves as the franchisor entity for the Fatburger enterprise and
6  collects royalty and marketing fees from all Fatburger franchisees.

7      4.    The Fatburger enterprise was started in 1952 by Lovie Yancey ("Yancey") and
8  Charles Simpson ("Simpson") as "Mr. Fatburger" with one hamburger stand in South Central
9  Los Angeles that catered to African-American musicians who needed a place that served good
10 food, late at night. The first burger stand proved so successful that Yancey and Simpson soon
11 opened three more locations. In 1973, Yancey and Simpson parted ways, and Yancey renamed
12 her restaurants "Fatburger" and opened a restaurant in Beverly Hills. In 1980, Yancey began
13 franchising the Fatburger concept. By the end of 1985, the chain had 32 locations, 4 of which
14 were company-owned, and it was named the fifth largest growing hamburger franchise chain by
15 "Entrepreneur" magazine, trailing only McDonald's, Burger King, Wendy's and Jack in the
16 Box.

17     5.    In or around 1990, Yancey sold her interests in the Fatburger enterprise to a
18 group of investors led by Island Trading Co., a New York investment firm ("Island Trading"),
19 and FB Corp. was created to effectuate the buyout. By the end of 1997, Fatburger had 29
20 restaurants (that were neither fast food restaurants nor full-service diners), of which 12 were
21 company-owned, but management wanted to expand much further. Nevertheless, for a variety
22 of reasons, that expansion was delayed.

23     6.    In 2001, former basketball-star-turned-entrepreneur Earvin "Magic" Johnson
24 ("Johnson") stepped forward, and one of his companies and several other investors acquired the
25 Fatburger enterprise from Island Trading. At that point, Keith Warlick ("Warlick") became
26 Fatburger's Chief Executive Officer and President, and the enterprise continued to expand into
27 new geographical areas.

28

3

1    7.    Beginning in 2003, Portland, Oregon-based Fog Cutter began acquiring its

2 current equity interests in FB Holdings through a series of transactions. As of the Petition Date,

3 Fog Cutter owned 83% of the voting power in FB Holdings. There are also a few minority

4 holders of preferred and common stock including Warlick, the former President and Chief

5 Executive Officer of the Fatburger enterprise.

6    8.    In 2008, the Debtors had combined annual revenue of approximately $26

7 million, approximately $14 million of which was generated by FB California and

8 approximately $12 million of which was generated by FB Nevada.

9 B.    The Necessity of the Debtors' Chapter 11 Bankruptcy Cases.

10    9.    Despite its impressive growth, the Debtors and their affiliates began to

11 experience financial problems as a result of: (1) a shortage in available restaurant financing,

12 and (2) a decline in same store sales over the past three years. For years, the Debtors and their

13 affiliates used General Electric Capital Franchise Finance Corporation and/or GE Capital

14 Business Asset Funding Corporation ("GE") as a source of financing. During the past few

15 years, the Debtors and their affiliates entered into a number of lease and other agreements

16 relating to the opening of new restaurants (explained in detail more below). However,

17 approximately two years ago, GE decided to substantially reduce its financing of small-to-

18 medium restaurant companies in response to the deteriorating U.S. and world economic

19 climate, and the Debtors and their affiliates were no longer able to use GE as a source of

20 financing. In addition, the Debtors and their affiliates were not able to find alternate financing

21 and were forced to finance the expenses related to constructing and equipping their new

22 restaurants that they had already committed to building from their existing cash flow. This

23 strain on existing cash flow caused the Debtors to start getting behind on their accounts payable

24 and landlord obligations.

25    10.    Additionally, during the past two years the Debtors' same store sales began to

26 decline as a result of the general slowdown in the U.S. economy. The Debtors and their

27 affiliates experienced a decline of 10.7% in sales in 2007 and a decline of 4.3% in sales in

28 2008. The Debtors strongly believe that they continue to have a viable and profitable business.

1   The Debtors' fundamental business plan is to restructure or reject a number of their unfavorable

2   leases and executory contracts so that they are left with only profitable locations, and to

3   restructure their existing debt through a confirmed plan of reorganization.

4   C.    The Necessity of the Debtors' Employment of FocalPoint as Financial Advisor and the

5   Terms of Such Employment.

6          11.    While the Debtors' businesses are profitable, the Debtors are substantially

7   under-capitalized.    The Debtors have only a small amount of cash in the bank, which is

8   insufficient liquidity for businesses of this size. Moreover, the Debtors believe that they have a

9   great product and concept to offer customers, but do not have a sufficient amount of money or

10  cash flow to advertise in a manner to maintain and hopefully increase their revenue, while their

11  competitors spend a substantial amount of money advertising. The Debtors must have funds to

12  increase substantially the amount of their advertising to remain competitive with their

13  competitors. The Debtors also want to have sufficient liquidity to make sure they are able to

14  make all of their post-petition lease payments on a timely basis and to have sufficient funds

15  available to them to fund the cure amounts that the Debtors will ultimately have to pay to

16  assume their leases, which statutorily must occur by the latest of 210 days after the Petition

17  Date unless the landlords agree otherwise. Finally, the Debtors want to make sure that they

18  have sufficient funds to pay for the administrative costs of these bankruptcy estates, including

19  the professional fees and expenses of counsel to the Debtors and the Official Committee of

20  Unsecured Creditors.

21         11.    Since the commencement of their Chapter 11 cases, the Debtors (in conjunction

22  with their non-debtor affiliates) have been actively engaged in seeking DIP financing. In that

23  regard, the Debtors and their non-debtor affiliates sought the assistance of FocalPoint, a local

24  investment bank, to serve as the Debtors' financial advisor to assist the Debtors in the process

25  of locating and consummating DIP financing. In exchange, the Debtors and the non-debtor

26  affiliates have agreed to pay a fee of $50,000 to FocalPoint upon the consummation of

27  financing from a DIP lender located by FocalPoint (the "Financing Success Fee"). The Debtors

28  and the non-debtor affiliates have agreed to share the cost of the Financing Success Fee on a

1  proportional basis based upon the amount of financing provided respectively to the Debtors and
2  the non-debtor affiliates.

3          12.    FocalPoint has spent a considerable amount of time discussing possible DIP
4  financing with the Debtors and facilitating due diligence efforts with a number of prospective
5  lenders with whom FocalPoint has developed relationships over the years including, among
6  others, Adjacent Opportunity Capital, L.L.C. ("Adjacent"), Diamond Creek Capital, Signature
7  Capital Partners, and Victory Park Capital.    As a result of the assistance provided by
8  FocalPoint, the Debtors have obtained DIP financing proposals which the Debtors deem
9  acceptable from both Signature Capital Partners (or its designee – "Signature") and Adjacent.

10         13.    The Debtors believe that the best DIP financing proposal is the one they
11  received from Signature to borrow up to $2.2 million on a secured basis in accordance with the
12  terms of the Letter of Intent (the "Signature LOI") submitted as part of the *"Debtors'*
13  *Emergency Motion For Authority To Incur Post-Petition Financing On A Secured Basis"* filed
14  with the Court on May 15, 2009 (the "Financing Motion").    Accordingly, by the Financing
15  Motion, the Debtors are seeking Court authority to enter into the Signature LOI and
16  consummate the DIP financing contemplated by the Signature LOI, including entering into the
17  documents related to such DIP financing. Given the importance of the financing sought and in
18  order to avoid any additional time delay to the Debtors' ability to consummate such financing,
19  by the Financing Motion, the Debtors are also seeking Court authority to enter into and perform
20  in accordance with the DIP financing proposal obtained from Adjacent if Signature fails to
21  consummate its financing.

22         14.    The Debtors seek an order of the Court approving their employment of
23  FocalPoint as the Debtors' financial advisor for the purposes described above and approving
24  the payment of the Financing Success Fee on a proportional basis based upon the amount of
25  financing provided respectively to the Debtors and the non-debtor affiliates. Under the terms of
26  the Signature LOI, the Debtors will receive $2.2 million of financing, which constitutes 57% of
27  the overall $3.85 million of financing to be provided by Signature to the Debtors and the non-
28  debtor affiliates. Accordingly, the Debtors' proportionate share of the Financing Success Fee is

1    $28,500 (*i.e.*, 57% of $50,000 = $28,500). If Signature fails to consummate its financing and
2    the Debtors pursue and consummate the DIP financing from Adjacent, the Debtors will pay
3    their proportionate share of the Financing Success Fee based upon the amount of financing
4    provided respectively to the Debtors and non-debtor affiliates by Adjacent.

5        15.    As part of the Debtors' employment of FocalPoint, the Debtors seek Court
6    authority to pay FocalPoint its Financing Success Fee directly from the proceeds of the DIP
7    financing, without the need for any further Court order.

8        16.    FocalPoint has not received any payment from the Debtors or the non-debtor
9    affiliates for post-petition services provided to the Debtors and the non-debtor affiliates.
10   FocalPoint has not received any lien or other interest in property of the Debtors or of any third
11   party (including the non-debtor affiliates) to secure payment of the Financing Success Fee.

12       17.    FocalPoint negotiated the terms of its retention, as set forth in this Application,
13   based upon a number of factors including, without limitation, the amount of time that
14   FocalPoint expected to put forth in the Debtors' cases and the market rate for success fees like
15   the Financing Success Fee proposed herein.

16       18.    FocalPoint has not shared or agreed to share the Financing Success Fee with any
17   other person or entity, except among its members.

18       19.    FocalPoint will not be maintaining time sheets or billing records in connection
19   with its representation of the Debtors since FocalPoint is not billing the Debtors on an hourly
20   basis. In addition, since FocalPoint is seeking to be employed pursuant to the provisions of
21   Section 328 of the Bankruptcy Code, FocalPoint is seeking to be excused from the need to file a
22   formal fee application with the Court in connection with the payment of the Financing Success
23   Fee.

24       20.    FocalPoint understands the provisions of the Bankruptcy Code which require,
25   among other things, Court approval of the Debtors' employment of FocalPoint and of the
26   portion of the Financing Success Fee that FocalPoint will receive from the Debtors' estates.

27

28

                                            7

1    21.    FocalPoint is not a creditor, equity security holder or insider of the Debtors (or
2 of the non-debtor affiliates). FocalPoint does not have any previous connection with any
3 insider of the Debtors or any insider of an insider of the Debtors.

4    22.    As set forth in the annexed Declaration of Daniel S. Conway (the "Conway
5 Declaration"), to the best of FocalPoint's knowledge, FocalPoint does not hold or represent any
6 interest materially adverse to the Debtors or the Debtors' estates. Also, to the best of
7 FocalPoint's knowledge, FocalPoint has no prior connection with the Debtors, any creditors of
8 the Debtors or their estates, or any other party in interest in the Debtors' cases, or any of their
9 respective attorneys or accountants, the United States Trustee or any person employed by the
10 United States Trustee.

11    23.    FocalPoint is not and was not an investment banker for any outstanding security
12 of the Debtors. FocalPoint has not been within three years before the Petition Date an
13 investment banker for a security of the Debtors, or an attorney for such an investment banker in
14 connection with the offer, sale or issuance of any security of the Debtors.

15    24.    Neither FocalPoint nor any member of FocalPoint is, nor was, within two years
16 before the Petition Date, a director, officer or employee of the Debtors or of any investment
17 banker for any security of the Debtors.

18    25.    As set forth in the annexed Conway Declaration, to the best of FocalPoint's
19 knowledge, FocalPoint does not hold or represent any interest materially adverse to the Debtors
20 or their estates or of any class of creditors or equity security holders, by reason of any direct or
21 indirect relationship to, connection with, or interest in, the Debtors or an investment banker for
22 any security of the Debtors, or for any other reason.

23    26.    The Debtors believes that their employment of FocalPoint upon the terms and
24 conditions set forth above is necessary and in the best interests of the Debtors' estates.

25    27.    A true and correct copy of the Notice of this Application, which was filed and
26 served in accordance with Local Bankruptcy Rule 2014-1(b)(2), is attached as Exhibit "A" to
27 the Conway Declaration annexed hereto.

28

1      **WHEREFORE**, the Debtors respectfully request that the Court approve the Debtors'

2 employment of FocalPoint as their financial advisor upon the terms and conditions set forth in

3 this Application.

4 Dated: May 19, 2009           FATBURGER RESTAURANTS OF CALIFORNIA,
                          INC. and FATBURGER RESTAURANTS OF

5                           NEVADA, INC.

6

7

8                           Harold Fox, Chief Financial Officer

9

10 Submitted By:
    LEVENE, NEALE, BENDER, RANKIN & BRILL L.L.P.

11

12 By:_____

13       RON BENDER
      JACQUELINE L. RODRIGUEZ

14       JULIET Y. OH
      LEVENE, NEALE, BENDER, RANKIN & BRILL L.L.P.

15       Proposed Attorneys for Chapter 11
      Debtors and Debtors in Possession

16

17

18

19

20

21

22

23

24

25

26

27

28

1  **WHEREFORE**, the Debtors respectfully request that the Court approve the Debtors'

2  employment of FocalPoint as their financial advisor upon the terms and conditions set forth in

3  this Application.

4  Dated: May 19, 2009                     FATBURGER RESTAURANTS OF CALIFORNIA,
                                            INC. and FATBURGER RESTAURANTS OF
5                                           NEVADA, INC.

6

7

8                                    _____
                                     Harold Fox, Chief Financial Officer
9

10  Submitted By:
    LEVENE, NEALE, BENDER, RANKIN & BRILL L.L.P.
11

12  By:_____
13      RON BENDER
        JACQUELINE L. RODRIGUEZ
14      JULIET Y. OH
        LEVENE, NEALE, BENDER, RANKIN & BRILL L.L.P.
15      Proposed Attorneys for Chapter 11
        Debtors and Debtors in Possession
16

17

18

19

20

21

22

23

24

25

26

27

28

1    **DECLARATION OF DANIEL S. CONWAY**

2    I, Daniel S. Conway, hereby declare as follows:

3    1.    I have personal knowledge of the facts set forth below and, if called to testify,
4    would and could competently testify thereto.

5    2.    I am the managing director of FocalPoint Partners, LLC ("FocalPoint"), whose
6    business office is located at 11766 Wilshire Blvd., Suite 1270, Los Angeles, CA 90025.

7    3.    Before joining FocalPoint, I worked at Fleet Capital Corporation originating,
8    structuring and underwriting asset-based and cash flow commercial loans for companies in a
9    variety of industries, and before then, led many successful transactions at NationsBank, GMAC
10    Commercial Services, and Barclays Business Credit.

11    4.    Fatburger Restaurants of California, Inc. and Fatburger Restaurants of Nevada,
12    Inc., the debtors and debtors in possession herein (the "Debtors"), have requested FocalPoint to
13    serve as the Debtors' financial advisor in connection with the Debtors' chapter 11 bankruptcy
14    cases in accordance with the terms of the Application to which this declaration is attached.

15    5.    FocalPoint is an investment bank and financial advisor, which was founded in
16    December 2002.    FocalPoint currently employs approximately 15 professionals, and also
17    periodically works with independent contractors when additional staffing is necessary. All of
18    FocalPoint's professionals have a vast amount of experience as investment bankers and
19    financial advisors, including in the representation of companies such as the Debtors.
20    FocalPoint has served as the investment banker and/or financial advisor in numerous Chapter
21    11 bankruptcy cases including the cases of "The Walking Company," case number 1:03-bk-
22    15880-GM, Bodies In Motion, Inc., dba "Bodies in Motion," case number 1:06-bk-10931-GM,
23    and "Shoe Pavilion," case number 1:08-bk-14939-MT.

24    6.    Following the commencement of their chapter 11 bankruptcy cases, the Debtors
25    and their non-debtor affiliates sought the assistance of FocalPoint to assist the Debtors in the
26    process of locating and consummating DIP financing. In exchange, the Debtors and the non-
27    debtor affiliates have agreed to pay a fee of $50,000 to FocalPoint upon the consummation of
28    financing from a DIP lender located by FocalPoint (the "Financing Success Fee"). The Debtors

1   and the non-debtor affiliates have agreed to share the cost of the Financing Success Fee on a

2   proportional basis based upon the amount of financing provided respectively to the Debtors and

3   the non-debtor affiliates.

4       7.      FocalPoint has spent a considerable amount time discussing possible DIP

5   financing with the Debtors and facilitating due diligence efforts with a number of prospective

6   lenders with whom FocalPoint has developed relationships over the years including, among

7   others, Adjacent Opportunity Capital, L.L.C. ("Adjacent"), Diamond Creek Capital, Signature

8   Capital Partners, and Victory Park Capital.    As a result of the assistance provided by

9   FocalPoint, the Debtors have obtained DIP financing proposals which the Debtors deem

10  acceptable from both Signature Capital Partners (or its designee – "Signature") and Adjacent.

11      8.      Based on discussions I have had with the Debtors' principals and management,

12  it is my understanding that the Debtors believe that the best DIP financing proposal is the one

13  they received from Signature to borrow up to $2.2 million on a secured basis in accordance

14  with the terms of the Letter of Intent (the "Signature LOI") submitted as part of the *"Debtors'*

15  *Emergency Motion For Authority To Incur Post-Petition Financing On A Secured Basis,"*

16  which 1 understand was filed with the Court on May 15, 2009 (the "Financing Motion").

17  Accordingly, it is my understanding that, by the Financing Motion, the Debtors are seeking

18  Court authority to enter into the Signature LOI and consummate the DIP financing

19  contemplated by the Signature LOI, including entering into the documents related to such DIP

20  financing.  It is further my understanding that, by the Financing Motion, the Debtors are also

21  seeking Court authority to enter into and perform in accordance with the DIP financing

22  proposal obtained from Adjacent if Signature fails to consummate its financing.

23      9.      Under the terms of the Signature LOI, the Debtors will receive $2.2 million of

24  financing, which constitutes 57% of the overall $3.85 million of financing to be provided by

25  Signature to the Debtors and the non-debtor affiliates.  Accordingly, the Debtors' proportionate

26  share of the Financing Success Fee is $28,500 (*i.e.*, 57% of $50,000 = $28,500).  If Signature

27  fails to consummate its financing and the Debtors pursue and consummate the DIP financing

28  from Adjacent, the Debtors have agreed to pay their proportionate share of the Financing

1 Success Fee based upon the amount of financing provided respectively to the Debtors and non-
2 debtor affiliates by Adjacent.

3     10.    By the Application, the Debtors and FocalPoint are seeking Court authority to
4 have FocalPoint be paid its Financing Success Fee directly from the proceeds of the DIP
5 financing, without the need for any further Court order.

6     11.    FocalPoint has not received any payment from the Debtors or the non-debtor
7 affiliates for post-petition services provided to the Debtors and the non-debtor affiliates.
8 FocalPoint has not received any lien or other interest in property of the Debtors or of any third
9 party (including the non-debtor affiliates) to secure payment of the Financing Success Fee.

10     12.    FocalPoint negotiated the terms of its retention, as set forth in the Application,
11 based upon a number of factors including, without limitation, the amount of time that
12 FocalPoint expected to put forth in the Debtors' cases and the market rate for success fees like
13 the Financing Success Fee proposed herein.

14     13.    FocalPoint has not shared or agreed to share the Financing Success Fee with any
15 other person or entity, except among its members.

16     14.    FocalPoint will not be maintaining time sheets or billing records in connection
17 with its representation of the Debtors since FocalPoint is not billing the Debtors on an hourly
18 basis. In addition, since FocalPoint is seeking to be employed pursuant to the provisions of
19 Section 328 of the Bankruptcy Code, FocalPoint is seeking to be excused from the need to file a
20 formal fee application with the Court in connection with the payment of the Financing Success
21 Fee.

22     15.    FocalPoint understands the provisions of the Bankruptcy Code which require,
23 among other things, Court approval of the Debtors' employment of FocalPoint and of the
24 portion of the Financing Success Fee that FocalPoint will receive from the Debtors' estates.

25     16.    To the best of my knowledge, FocalPoint is not a creditor, equity security holder
26 or insider of the Debtors (or their non-debtor affiliates). To the best of my knowledge,
27 FocalPoint does not have any previous connection with any insider of the Debtors or any
28 insider of an insider of the Debtors.

12

17. To the best of my knowledge, FocalPoint does not hold or represent any interest materially adverse to the Debtors or the Debtors' estates. Also, to the best of my knowledge, FocalPoint has no prior connection with the Debtors, any creditors of the Debtors or their estates, or any other party in interest in the Debtors' cases, or any of their respective attorneys or accountants, the United States Trustee or any person employed by the United States Trustee.

18. FocalPoint is not and was not an investment banker for any outstanding security of the Debtors. FocalPoint has not been within three years before the Petition Date an investment banker for a security of the Debtors, or an attorney for such an investment banker in connection with the offer, sale or issuance of any security of the Debtors.

19. To the best of my knowledge, neither FocalPoint nor any member of FocalPoint is, nor was, within two years before the commencement of the Debtors' cases, a director, officer or employee of the Debtors or of any investment banker for any security of the Debtors.

20. To the best of my knowledge, FocalPoint does not hold or represent any interest materially adverse to the Debtors or their estates or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors or an investment banker for any security of the Debtors, or for any other reason.

21. A true and correct copy of the Notice of the Application, which I am informed by proposed bankruptcy counsel for the Debtors was filed and served in accordance with Local Bankruptcy Rule 2014-1(b)(2), is attached hereto as Exhibit "A."

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on this 19th day of May, 2009, at Los Angeles, California.



Daniel S. Conway, Declarant

13

# EXHIBIT A

1  RON BENDER (SBN 143364)
   JACQUELINE L. RODRIGUEZ (SBN 198838)
2  JULIET Y. OH (SBN 211414)
   LEVENE, NEALE, BENDER, RANKIN & BRILL L.L.P.
3  10250 Constellation Blvd., Suite 1700
   Los Angeles, California 90067
4  Telephone: (310) 229-1234
   Facsimile: (310) 229-1244
5  Email:  rb@lnbrb.com, jlr@lnbrb.com, jyo@lnbrb.com
6
   Proposed Attorneys for Chapter 11 Debtors
7  and Debtors in Possession
8
9               UNITED STATES BANKRUPTCY COURT
10              CENTRAL DISTRICT OF CALIFORNIA
11              SAN FERNANDO VALLEY DIVISION
12

| 13 | In re | ) | Case No. 1:09-bk-13964-KT |
| | | ) | Case No. 1:09-bk-13965-KT |
| 14 | FATBURGER RESTAURANTS OF | ) | |
| | CALIFORNIA, INC. and | ) | Chapter 11 |
| 15 | FATBURGER RESTAURANTS OF | ) | |
| 16 | NEVADA, INC., | ) | |
| | | ) | |
| 17 |         Debtors. | ) | |
| | | ) | |
| 18 | ———————————————— | ) | |
| 19 | ___ Affects Fatburger Restaurants of | ) | **NOTICE OF APPLICATION OF** |
| | California, Inc. Only | ) | **DEBTORS AND DEBTORS IN** |
| 20 | | ) | **POSSESSION TO EMPLOY** |
| | ___ Affects Fatburger Restaurants of | ) | **FOCALPOINT PARTNERS, LLC AS** |
| 21 | Nevada, Inc. Only | ) | **FINANCIAL ADVISOR PURSUANT** |
| | | ) | **TO 11 U.S.C. § 328** |
| 22 | _X_  Affects Both Debtors | ) | |
| 23 | | ) | [No Hearing Required – Local Bankruptcy |
| | | ) | Rule 2014-1(b)] |
| 24 | | ) | |
| 25 | | ) | |
| 26 | | ) | |
| 27 | | ) | |
| 28 | | | |

1    **TO THE HONORABLE KATHLEEN THOMPSON, UNITED STATES**

2    **BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, THE**

3    **OFFICIAL COMMITTEE OF UNSECURED CREDITORS AND ITS COUNSEL,**

4    **AND ALL PARTIES REQUESTING SPECIAL NOTICE:**

5        **PLEASE TAKE NOTICE** that Fatburger Restaurants of California, Inc. and

6    Fatburger Restaurants of Nevada, Inc., the debtors and debtors in possession in the above-

7    captioned chapter 11 bankruptcy cases (collectively, the "Debtors"), have filed an application

8    (the "Application") to employ FocalPoint Partners, LLC ("FocalPoint") as the Debtors'

9    financial advisor pursuant to 11 U.S.C. § 328 and upon the terms and conditions set forth in

10    the Application.

11        **PLEASE TAKE FURTHER NOTICE** that the Debtors and their non-debtor

12    affiliates have sought the assistance of FocalPoint, a local investment bank, to serve as the

13    Debtors' financial advisor to assist the Debtors in the process of locating and consummating

14    DIP financing. In exchange, the Debtors and the non-debtor affiliates have agreed to pay a

15    fee of $50,000 to FocalPoint upon the consummation of financing from a DIP lender located

16    by FocalPoint (the "Financing Success Fee"). The Debtors and the non-debtor affiliates have

17    agreed to share the cost of the Financing Success Fee on a proportional basis based upon the

18    amount of financing provided respectively to the Debtors and the non-debtor affiliates.[1]  The

19    Debtors seek Court authority to pay FocalPoint its Financing Success Fee directly from the

20    proceeds of the DIP financing, without the need for any further Court order.

21        **PLEASE TAKE FURTHER NOTICE** that FocalPoint has not received any payment

22    from the Debtors or the non-debtor affiliates for post-petition services to be provided to the

23

---

24        [1] Under the terms of a letter of intent received by the Debtors from Signature Capital Partners (or its designee – "Signature), the Debtors will receive $2,200,000 of financing, which constitutes 57%

25    of the overall $3,850,000 of financing to be provided by Signature to the Debtors and the non-debtor affiliates. Accordingly, the Debtors' proportionate share of the Financing Success Fee is $28,500 (*i.e.*,

26    57% of $50,000 = $28,500). If Signature fails to consummate its financing and the Debtors pursue and consummate DIP financing from an alternate lender, Adjacent Opportunity Capital, L.L.C.

27    ("Adjacent"), the Debtors will pay their proportionate share of the Financing Success Fee based upon the amount of financing provided respectively to the Debtors and non-debtor affiliates by Adjacent.

28

1  Debtors and the non-debtor affiliates. FocalPoint has not received any lien or other interest in
2  property of the Debtors or of any third party (including the non-debtor affiliates) to secure
3  payment of the Financing Success Fee.

4      The Application is based on this Notice, the Application, the Declaration of Daniel S.
5  Conway and all other papers filed in support of the Application, the entire record of the cases,
6  and any other evidence properly presented to the Court.

7      **PLEASE TAKE FURTHER NOTICE** that any request for a copy of the Application
8  must be made in writing to Levene, Neale, Bender, Rankin & Brill L.L.P., 10250
9  Constellation Blvd., Suite 1700, Los Angeles, California 90067, Attention: Juliet Y. Oh, Tel:
10 (310) 229-1234, Fax: (310) 229-1244, Email: JYO@LNBRB.com.

11     **PLEASE TAKE FURTHER NOTICE** that, pursuant to Local Bankruptcy Rule
12 2014-1(b)(3)(E), any response and request for a hearing, in the form required by Local
13 Bankruptcy Rule 9013-1(f)(1), must be filed and served on the Debtor, LNBRB and the
14 Office of the United States Trustee no later than 15 days following the date of service of this
15 Notice.

16     **PLEASE TAKE FURTHER NOTICE** that failure to file and serve an objection or
17 request for hearing within this fifteen (15) day period may be deemed by the Court to be
18 consent to the relief requested in the Application.

19 Dated: May 19, 2009            FATBURGER RESTAURANTS OF
                                  CALIFORNIA, INC. and FATBURGER
20                                RESTAURANTS OF NEVADA, INC.

21
                        By:_____
22                              RON BENDER
                                JULIET Y. OH
23                              LEVENE, NEALE, BENDER,
                                   RANKIN & BRILL L.L.P.
24                              Proposed Attorneys for
                                Chapter 11 Debtors and
25                              Debtors in Possession

26

27

28

3

| In re: | CHAPTER 11 |
|---|---|
| | CASE NUMBER **Lead Case No. 1:09-bk-13964-KT** (Jointly Administered with Case No. 1:09-bk-13965-KT) |
| FATBURGER RESTAURANTS OF CALIFORNIA, INC., et al. | |
| Debtor(s). | |

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 10250 Constellation Boulevard, Suite 1700, Los Angeles, California 90067.

A true and correct copy of the foregoing document described as **APPLICATION OF DEBTORS AND DEBTORS IN POSSESSION TO EMPLOY FOCALPOINT PARTNERS, LLC AS FINANCIAL ADVISOR PURSUANT TO 11 USC SECTION 328; DECLARATION OF DANIEL S. CONWAY IN SUPPORT THEREOF** will be served on the Judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On **May 19, 2009 I** checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

- Ron Bender   rb@lnbrb.com
- Bradley D Blakeley   bblakeley@blakeleyllp.com
- Jennifer L Braun   jennifer.l.braun@usdoj.gov
- Gustavo E Bravo   gbravo@smaha.com
- Candace Carlyon   ccarlyon@sheacarlyon.com
- Leslie A Cohen   leslie@lesliecohenlaw.com, jaime@lesliecohenlaw.com
- Andrew A Goodman   agoodman@andyglaw.com
- Raffi Khatchadourian   raffi@hemar-rousso.com
- Raymond King   rking@raykinglaw.com
- Mette H Kurth   kurth.mette@arentfox.com
- Rodger M Landau   rlandau@lblawllp.com, vedwards@lblawllp.com
- Ian Landsberg   ilandsberg@mcguirewoods.com
- Ethan B Minkin   ethan.minkin@kutakrock.com
- Juliet Y Oh   jyo@lnbrb.com, jyo@lnbrb.com
- Jacqueline L Rodriguez   jlr@lnbrb.com
- United States Trustee (SV)   ustpregion16.wh.ecf@usdoj.gov
- Sanford M Wall   brenda.eiden@kts-law.com

**II.  SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served):
On ----------------------I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. *Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.*

☐ Service information continued on attached page

**III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **May 19, 2009** I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission

| In re:<br><br>FATBURGER RESTAURANTS OF CALIFORNIA, INC., et al.<br><br>Debtor(s). | CHAPTER 11<br>CASE NUMBER **Lead Case No. 1:09-bk-13964-KT** (Jointly Administered with Case No. **1:09-bk-13965-KT**) |
|---|---|

and/or email as follows. *Listing the judge here constitutes a declaration that personal delivery on the judge <u>will be</u> completed no later than 24 hours after the document is filed.*

**By attorney service**
The Hon. Kathleen Thompson
United States Bankruptcy Court
21041 Burbank Boulevard
Woodland Hills, CA 91367

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| May 19, 2009 | Marguerite Hardin | *Marguerite Hardin* |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                **F 9013-3.1**